NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 12 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JANE DOE, on behalf of herself and all others similarly situated,

Plaintiff - Appellant,

v.

WEBGROUP CZECH REPUBLIC, AS; WGCZ HOLDING, AS; WGCZ LIMITED, SRO; NKL ASSOCIATES SRO; TRAFFIC F, SRO; GTFLIX TV, SRO; FTCP, SRO; HC MEDIA, SRO; FBP MEDIA SRO,

Defendants - Appellees.

No. 25-2424

D.C. No.
2:21-cv-02428-SPG-SK

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted July 8, 2026
Pasadena, California

Before: RAWLINSON and SANCHEZ, Circuit Judges, and FITZWATER, District Judge.**
Partial Concurrence and Partial Dissent by Judge FITZWATER.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Sidney A. Fitzwater, United States District Judge for the Northern District of Texas, sitting by designation.

Plaintiff Jane Doe, a child sex trafficking victim, appeals the district court's dismissal of her claims against Defendants WebGroup Czech Republic, a.s., and related entities (collectively, "WebGroup"), operators of pornography websites. Doe asserts claims under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), federal child pornography statutes, and California privacy law. We have jurisdiction under 28 U.S.C. § 1291. We review "de novo the decision to grant a motion to dismiss for failure to state a claim," *Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1113 (9th Cir. 2025), and we affirm.

1.      Section 230 of the Communications Decency Act "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat . . . as a publisher or speaker (3) of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009), *as amended* (Sept. 28, 2009) (footnote omitted). Doe's claims against WebGroup fall under Section 230 immunity.

The parties do not dispute that WebGroup is an interactive computer service provider. For the second prong, a plaintiff's theory of liability treats a defendant as a publisher if the legal duty at issue "obliges the defendant to 'monitor third-party content'—or else face liability." *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 742 (9th Cir. 2024). In *Doe 1 v. Twitter, Inc.*, this court held that "Twitter's duty not to 'knowingly benefit' from participation in a sex-trafficking venture

2                                                    25-2424

. . . imposed a monitoring obligation" where Twitter monetizes all live content on its platform, and "the only way for Twitter to avoid the unlawful benefit from hosting child pornography would be to remove third-party posts—a quintessential publishing activity." 148 F.4th 635, 643 (9th Cir. 2025), *cert. denied sub nom. Doe v. X Corp.*, No. 25-949, 2026 WL 1377104 (May 18, 2026). Similarly here, Doe alleges that WebGroup indiscriminately "profits from images and videos of commercial sex acts" posted on its websites by selling advertisements based on the number of views for each piece of content. She seeks injunctive relief "requiring the Defendants to identify and remove child pornography and implement corporate-wide policies and practices to prevent continued dissemination of child pornography or child sex trafficking." Thus, Doe's theory of liability obligates WebGroup to monitor and remove third-party content, thereby treating WebGroup as a publisher.

Under the third prong of *Barnes*, Section 230 immunity applies "only if the interactive computer service provider is not also an 'information content provider,' which is defined as someone who is 'responsible, in whole or in part, for the creation or development of' the offending content." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) (quoting 47 U.S.C. § 230(f)(3)). "[A] website helps to develop unlawful content . . . if it contributes materially to the alleged illegality of the conduct." *Id.*

at 1168. By contrast, "providing neutral tools as to the alleged unlawfulness does not amount to development." *Calise*, 103 F.4th at 745. WebGroup's sites offer neutral tools such as tags, keywords, search functions, recommendation algorithms, thumbnails, revenue-sharing schemes, VPN use, and anonymized communication. These tools do not contribute materially to the illegality of child sex abuse material or treat such content "differently than any other third-party created content, and thus are entitled to § 230 immunity." *Gonzalez v. Google LLC*, 2 F.4th 871, 894 (9th Cir. 2021), *rev'd on other grounds sub nom. Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023); *see also Calise*, 103 F.4th at 745 (finding social media platform immune from liability based on its neutral efforts to solicit and assist third-party advertisers); *Twitter*, 148 F.4th at 646 (finding Twitter immune from liability for third-party abuse of its hashtags and search functions to find child pornography).

2.    The Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA") exception displaces Section 230 immunity for a TVPRA claim if "the website's own conduct violated [18 U.S.C. §] 1591." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022). For Doe to invoke the FOSTA exception, WebGroup "must knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities," which "requires actual knowledge and a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Id.* at 1145 (citation omitted). "Mere association with sex

4                                                          25-2424

traffickers" or "turn[ing] a blind eye to the source of [one's] revenue" is insufficient. *Id.* (cleaned up). Doe alleges that WebGroup maintains "profit-sharing relationships [with] sex traffickers, such as the channel partner who distributed Jane Doe's abuse videos on the XVideos." But despite using the term "sex traffickers," Doe does not allege that this channel partner "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed]" her "to engage in a commercial sex act," as defined in the statute. 18 U.S.C. § 1591(a). Nor does Doe adequately plead WebGroup's knowledge of her sex trafficking: Doe alleges that she "reached out to XVideos and XNXX multiple times over the years, beginning in at least 2017, requesting her abuse videos be removed." But she does not allege that she alerted WebGroup to the circumstances of sex trafficking until her attorney sent a cease and desist letter in 2020, upon which WebGroup removed her videos. Therefore, Doe fails to adequately allege WebGroup's knowledge of and participation in sex trafficking activities for the FOSTA exception to apply.

**AFFIRMED.**[1]

---

[1] Because Section 230 bars all of Doe's claims, we do not reach the district court's alternative holdings on the extraterritorial application of the TVPRA or the merits of Doe's child pornography claim.

25-2424

*Doe v. WebGroup Czech Republica*, AS, No. 25-2424.

FITZWATER, District Judge, concurring in part and dissenting in part:

I concur in the memorandum's affirmance of the district court's dismissal at the Fed. R. Civ. P. 12(b)(6) stage of Plaintiff-Appellant Jane Doe's ("Doe's") claims under the federal child pornography statutes and California privacy law.

I respectfully dissent, however, from the majority's affirmance of the dismissal of Doe's claim under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). I would hold that Doe has pleaded a plausible claim under the TVPRA and has satisfied the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA") exception to immunity under § 230 of the Communications Decency Act. I would therefore conclude that Defendants-Appellees (collectively, "WebGroup")[1] are not entitled to dismissal of Doe's TVPRA claim under Rule 12(b)(6) and that the dismissal of that claim should be reversed.[2]

I

To survive WebGroup's motion to dismiss, Doe was obligated to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

---

[1] I use the same collective term as the memorandum uses. The SAC refers collectively to the Defendants-Appellees as the "WGCZ Defendants."

[2] I would also hold that WebGroup is not beyond the territorial reach of the TVPRA because this case involves a permissible domestic application of the Act.

550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "We take the allegations in the complaint as true and view them in the light most favorable to the plaintiff[]." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1140 (9th Cir. 2022). "We review a decision on a motion to dismiss for failure to state a claim de novo." *Id.*

II

Count I of Doe's second amended complaint ("SAC") alleges a claim under the TVPRA for benefiting from a sex trafficking venture. The TVPRA imposes civil liability on anyone who "knowingly benefits . . . from participation in a venture which that person knew or should have known" was engaged in sex trafficking. 18 U.S.C. § 1595(a); *Reddit, Inc.*, 51 F.4th at 1141.

WebGroup maintains that § 230 of the Communications Decency Act bars Doe's suit, including her TVPRA claim. Section 230 immunizes an interactive computer service from liability when a plaintiff seeks to treat it "as a publisher or

- 2 -

speaker" of information provided by another content provider. *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100 (9th Cir. 2009), *as amended* (Sept. 28, 2009). I agree with the panel majority that Doe's claims otherwise fall within § 230's grant of immunity. I disagree with the majority only insofar as I would hold that the FOSTA exception displaces that immunity when it comes to Doe's TVPRA claim.

FOSTA withdraws § 230 immunity when "the conduct underlying the claim constitutes a violation of section 1591[.]" 47 U.S.C. § 230(e)(5)(A). The standards under §§ 1591 and 1595 of the TVPRA substantially overlap, but § 1591 imposes a more demanding knowledge requirement. Unlike § 1595, which reaches defendants who "knew or should have known" of the trafficking venture, § 1591 requires actual knowledge of the venture and that the defendant knowingly assisted, supported, or facilitated the venture. 18 U.S.C. §§ 1591(a)(2), 1591(e)(4), 1595(a); *see Reddit*, 51 F.4th at 1145. Accordingly, to survive WebGroup's motion to dismiss, the SAC must plausibly plead both actual knowledge of the trafficking venture and "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit." *Reddit, Inc.*, 51 F.4th at 1145 (quoting *Geiss v. Weinstein Co. Holdings LLC*, 383 F.Supp.3d 156, 169 (S.D.N.Y. 2019)). I would hold that it does.

III

A

The parties do not appear to dispute that Doe has sufficiently pleaded that WebGroup benefited from a sex trafficking venture. The SAC alleges that WebGroup's "revenue model includes being able to sell ads to advertisers," noting that WebGroup "places advertisements before videos play, underneath videos, and around videos." Concerning Doe specifically, the SAC alleges that "[v]ideos of adults engaging in sex acts with Jane Doe while she was a minor were uploaded and disseminated through websites owned, operated and/or controlled by" WebGroup, and that "advertisements were placed on webpages containing [child sexual abuse material ('CSAM')] depicting Jane Doe . . . [which] provided substantial data and advertising revenue" for WebGroup.

B

Doe has also plausibly pleaded that WebGroup actually knew of the sex-trafficking venture from which it benefited. The SAC alleges that WebGroup "reviewed, monitored, and approved incoming videos to determine whether the videos may be posted to channel accounts." This review process may itself support WebGroup's knowledge of sex trafficking. *See Doe 1 v. Twitter, Inc.*, 148 F.4th 635, 644 (9th Cir. 2025) ("Twitter's review of the challenged videos that were posted by

- 4 -

a trafficker establishes its knowledge that the videos contained child pornography"), *cert. denied sub nom.*, *Doe v. X Corp.*, No. 25-949, ___ S.Ct. ___, 2026 WL 1377104 (U.S. May 18, 2026).

Furthermore, the SAC alleges that WebGroup generally "generated, originated, created, or otherwise edited tags associated with videos loaded onto its websites," including tags such as "jailbait," "not 18," "7th grader," and "toddler," that, in the context of an adult website, indicate CSAM.[3]  Similarly, the SAC alleges that WebGroup generated thumbnails for CSAM videos.  These allegations enable the court to draw the reasonable inference that WebGroup knew of CSAM videos on its platform through its own interactions with the videos.  *Cf. Reddit, Inc.*, 51 F.4th at 1145 (holding that allegations suggested "that Reddit 'turned a blind eye' to the unlawful content posted on its platform").

Perhaps most important, the SAC alleges that WebGroup was "put on notice many times that uploaders uploaded CSAM content to their websites through notifications from victims, law enforcement, and journalists[.]"  While the panel majority holds that Doe did not allege that she specifically alerted WebGroup "to the circumstances of sex trafficking until her attorney sent a cease and desist letter in

---

[3] At a hearing, Doe appears to have acknowledged that most tags are user generated, but that concession does not negate pleadings that WebGroup actually knew of the tags.

2020," Doe does plead elsewhere in the SAC that WebGroup "[was] put on specific notice by Jane Doe that the content depicting her was CSAM content yet they continued to monetize and profit from this content." I would hold that these allegations, viewed in the light most favorable to Doe, support the reasonable inference that WorldGroup knew of the sex trafficking venture.

C

Finally, I would hold that Doe has plausibly pleaded that WebGroup knowingly assisted, supported, or facilitated the sex-trafficking venture, such that the court can reasonably infer a causal relationship between WebGroup's affirmative conduct and the benefits it received. The panel majority states that "Doe does not allege that th[e] channel partner 'cause[d] [her] to engage in a commercial sex act[.]'" But from my perspective, it was the distribution of the videos that made the sex act "commercial"; without distribution, it was simply abuse. *See* 18 U.S.C. § 1591(e)(3). Regardless, it is WebGroup's actions—not those of the channel partners—that should be the focus of the causation inquiry.

The SAC alleges generally that WebGroup pays "millions a year to content providers" "through: (1) advertisement income sharing; (2) revenue sharing; and (3) XVideos red share accounts." The SAC also alleges that WebGroup "incentiviz[ed] some CSAM Uploaders through prospective payment for their content."

- 6 -

Concerning Doe's trafficking, the SAC alleges that WebGroup is in a profit-sharing relationship with "the channel partner who distributed Jane Doe's abuse videos[.]"  And the SAC asserts that WebGroup "maintained a continuous business relationship with this sex trafficking channel and continued to share profits with it" "even after [Doe's] videos were removed . . . as illegal CSAM[.]"

WebGroup's revenue sharing with channel partners distributing CSAM constitutes active participation in sex trafficking. *See Reddit, Inc.*, 51 F.4th at 1145-46 (explaining acts that constitute active participation in sex trafficking); *cf. Doe v. Grindr Inc.*, 128 F.4th 1148, 1155 (9th Cir. 2025) (holding that providing "a platform that facilitated sharing of messages between" abusers and their victims amounted to turning a blind eye to sex trafficking rather than active participation), *cert. denied*, 146 S.Ct. 319 (2025); *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 798-99 (5th Cir. 2024) (holding that the plaintiff's showing that defendant provided "back-office business services to a company it knew (or should have known) was engaged in sex trafficking" was sufficient to avoid § 230 immunity).   The revenue-sharing relationship also distinguishes WebGroup from other social media platforms found immune under § 230.  *See Twitter, Inc.*, 148 F.4th at 644; *Grindr Inc.*, 128 F.4th at 1155; *Reddit, Inc.*, 51 F.4th at 1145.

- 7 -

\* \* \*

In sum, although I would affirm in part, I would reverse the dismissal of Doe's claim under the TVPRA. Because I would hold that Doe has plausibly pleaded a TVPRA claim and that the FOSTA exception to immunity under § 230 of the Communications Decency Act applies, I respectfully dissent in part.